**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

STEPHEN HARDIN,

Plaintiff,

v. Civ. No. 25-940 DHU/GJF

NEW MEXICO CHRISTIAN CHILDREN'S HOME,

Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Defendant's Partial Motion to Dismiss for Failure to Exhaust Administrative Remedies and Failure to State a Claim (Dkt. No. 10) ("Motion"). The Motion is fully briefed. *See* Dkt. Nos. 14 (response), 15 (reply). Having thoroughly considered the motion, briefs, pleadings, and applicable law, the Court **RECOMMENDS** the Motion be **GRANTED IN PART AND DENIED IN PART**.[1] Specifically, the Court recommends that the Motion be granted with respect to Counts V, VI, VIII (breach of contract), and IX and denied with respect to Counts III, IV, and VIII (promissory estoppel).

## I. FACTUAL ALLEGATIONS[2]

This case arises from a complaint filed in this Court in which Plaintiff, who is proceeding *pro se*, alleges a "sustained pattern of discrimination, retaliation, and system leadership failures at New Mexico Christian Children's Home ("NMCCH"), culminating in [his] wrongful termination." First Amended Complaint ("FAC"), Dkt. No. 5 at 2.

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's May 18, 2026 Order Referring Case. Dkt. No. 23.

[2] The facts that follow come from Plaintiff's First Amended Complaint (Dkt. No. 5). The Court must accept all well-pleaded allegations as true, viewing the allegations in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

From approximately 2019 to 2025, "employees reported [human resources] breaches of confidentiality, favoritism, and nepotism" to the leadership at NMCCH, but "[l]eadership ignored these reports." *Id*. at 3. Over 40 employees left NMCCH, many citing discrimination or retaliation, but these claims were met with "[s]ilence by [NMCCH's] Executive Director, HR Director, and Board." *Id*. Indeed, NMCCH "[l]eadership tolerated homophobic and racially insensitive remarks." *Id*.

In July 2024, Plaintiff posted general comments regarding "workplace integrity" on his personal social media account without naming NMCCH. *Id*. In response, NMCCH Human Resources ("HR") "threatened him with termination for a fabricated violation." *Id*. Around the same time, a "favored employee[,] who harassed others[,] retired with honors." *Id*.

The following month, Plaintiff disclosed that he suffered from Attention Deficit Hyperactivity Disorder ("ADHD") and requested accommodations for that condition. *Id*. at 4. On September 27, 2024, accommodations were discussed. *Id*. That same day, NMCCH's Executive Director delivered to Plaintiff a "demotion contract," which removed him from campus. *Id*. Within days, a new conflict of interest policy was also implemented that, in effect, revoked Plaintiff's ability to perform a previously approved side job. *Id*.

In February 2025, NMCCH engaged in settlement negotiations with Plaintiff but withdrew from those negotiations in March 2025. *Id*. During the same timeframe, Plaintiff's infant daughter underwent emergency surgery. *Id*. Still, in April 2025, NMCCH terminated Plaintiff, which intensified his emotional distress. *Id*.

According to Plaintiff, he timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") that included within its scope each of the claims now asserted in his First Amended Complaint ("Complaint"). *Id*. As an exhibit to his Complaint, Plaintiff attaches the Right-to-Sue letter he received from the EEOC on July 11, 2025, which explains that the EEOC

made no findings as to the merits of his charge and advises that he has ninety (90) days from receipt of the letter to file suit. Dkt. No. 5, Ex. A. Plaintiff does not supply his EEOC charge as an attachment to his Complaint, nor does he outline its contents.

Sometime after Plaintiff disclosed that he suffered from ADHD, and after he engaged in protected activity related to that disability, NMCCH removed him from an "Executive Director succession track" on which he had previously been placed. *Id*. at 4. Ultimately, Plaintiff's employment with NMCCH was terminated. *Id*. at 2.

## II. PROCEDURAL HISTORY

On September 29, 2025, Plaintiff filed his initial complaint asserting claims against NMCCH, Aaron Goodman, David VanWettering, and the Board of Directors. Dkt. No. 1. The Court notified Plaintiff that his complaint generally failed to state claims because it did not give each Defendant fair notice of the grounds for his claims against them. Dkt. No. 4. The Court ordered Plaintiff to file an amended complaint explaining *what* each Defendant did to him, *when* they did it, *how* each Defendant's action harmed him, and what specific legal right he believed each Defendant had violated. *Id*. at 3.

On October 6, 2025, Plaintiff filed his First Amended Complaint, the now-operative "Complaint" discussed herein. Dkt. No. 5. Liberally construing its allegations, the Court determined that it stated claims only against Plaintiff's former employer, NMCCH, and failed to state claims against Defendants Goodman, VanWettering, or the Board of Directors. Dkt. No. 7 at 2. Thus, the Court ordered the Clerk's Office to request that only NMCCH waive service pursuant to Federal Rule of Civil Procedure 4(d). Dkt. No. 7 at 3.

NMCCH, in turn, both answered the Complaint and filed the instant Motion on January 13, 2026. Dkt. Nos. 9, 10. Then, on May 18, 2026, the Court granted the parties' Joint Motion to Dismiss Unserved Defendants, dismissing without prejudice Plaintiff's claims against Defendants

Goodman, VanWettering, and the Board of Directors.[3] Dkt. No. 24.

As Plaintiff describes his remaining claims against NMCCH, they are comprised of "nine causes of action under the ADA, Title VII, and New Mexico law." *Id*. at 4. More specifically, he asserts claims for discrimination and retaliation under the ADA, retaliation under Title VII, and state law claims for wrongful termination, breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, negligent supervision and retention, intentional infliction of emotional distress, and "Pattern and Practice of Retaliation." *See id*. at 4–5. In its Motion to Dismiss, NMCCH insists that "[t]he case should proceed, if at all, only on the ADA counts (Counts I-II)." Dkt. No. 10 at 3. In those claims, Plaintiff alleges (1) that NMCCH engaged in discrimination in violation of the Americans with Disabilities Act ("ADA") by failing to accommodate his disability and taking adverse actions against him because of his disability (Count I); and (2) that NMCCH retaliated against him in violation of the ADA following his requests for accommodation and his opposition to discrimination (Count II). Dkt. No. 5 at 4.

## III. LEGAL STANDARDS

### A. Rule 8 Standard

Under Federal Rule of Civil Procedure 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

[3] NMCCH apparently finds some ambiguity in the Court's June 10, 2026 Order of Dismissal, as it explicitly incorporates its arguments regarding Counts III through IX as grounds for dismissal of those same claims *against the Board of Directors*. Dkt. No. 10 at 2 n.1. NMCCH further explains that "[t]he Board of Directors reserves its right to respond further if the Court determines any claims remain pending against it." *Id*. But reading the Court's Order of Dismissal (Dkt. No. 24) in conjunction with its Order Regarding Service (Dkt. No. 7) makes clear that the Court has dismissed without prejudice Plaintiff's claims against the Board of Directors. Consequently, the Court does not address those dismissed claims here.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The required statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

**B. Rule 12(b)(6) Standard**

A Rule 12(b)(6) motion prompts a court to "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003). When ruling on such a motion, a court accepts "all well-pleaded factual allegations in the complaint" and construes them "in the light most favorable" to the plaintiff. *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1305 (10th Cir. 2020). "Well-pled" means that allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Indeed, courts "disregard conclusory statements and look only to whether the remaining[ ] factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (quotation omitted). To survive a motion to dismiss, the plaintiff must put forth facts stating a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. 678. While plausibility is not the same as probability, it is more than a "sheer possibility." *Id.*

If on a motion to dismiss matters outside the pleadings are presented to and considered by the court, the motion generally must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). No conversion is required, however, when the court considers documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is

questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

Courts should be hesitant to dismiss a claim with prejudice under Rule 12(b)(6) and should instead err on the side of allowing a plaintiff to amend. *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022). Even so, a court should dismiss a claim with prejudice when it finds that it would be futile to allow the plaintiff to amend that claim. *Id.* at 1027.

### C. *Pro Se* Standard

A *pro se* litigant's pleadings are construed liberally using a less stringent standard than pleadings drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). While a court may make allowances for the pro se plaintiff's failure to cite proper legal authority, his misunderstanding of legal theories, or his unfamiliarity with pleading requirements, a court will not act as advocate for the pro se litigant. *Id.*

## IV. ANALYSIS

### A. The Court recommends denial of the Motion insofar as it seeks dismissal of Plaintiff's Title VII claim for failure to exhaust.

In Count III, Plaintiff alleges that NMCCH retaliated against him in violation of Title VII for his "opposition to unlawful practices." Dkt. No. 5 at 5. In its Motion, NMCCH contends that the Complaint "fail[s] to establish" that Plaintiff exhausted his administrative remedies with respect to his Title VII retaliation claim, leaving this Court without subject matter jurisdiction over that claim. Dkt. No. 10 at 3. Plaintiff, in contrast, insists that Title VII's exhaustion requirement is *not* a jurisdictional prerequisite and that dismissal for want of subject matter jurisdiction would be improper at this stage of the litigation. Dkt. No. 14 at 2. Plaintiff's understanding of the Title VII exhaustion requirement more accurately reflects current law.

NMCCH relies on *Jones v. United Parcel Services, Inc.*, 502 F.3d 1176, 1183 (10th Cir.

2007) and earlier Tenth Circuit decisions, both published and unpublished, in support of its position that "[i]n the Tenth Circuit, exhaustion of administrative remedies *is a jurisdictional prerequisite* to filing a Title VII action."[4] Dkt. No. 10 at 4 n.3 (emphasis added) (citing *Jones*, 502 F.3d at 1183; *Alcivar v. Wynne*, 268 F. App'x 749, 753 (10th Cir. 2008); *Ransom v. U.S. Postal Serv.*, 170 F. App'x 525, 527 n.2 (10th Cir. 2006); *Wells v. Shalala*, 228 F.3d 1137, 1142–43 (10th Cir. 2000); *Jones v. Runyon* 91 F.3d 1398, 1399 (10th Cir. 1996); *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1303 (10th Cir. 1980); *Seymore & Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997); *Carmody v. SCI Colo. Funeral Servs., Inc.*, 76 F. Supp. 2d 1101, 1103–04 (D. Colo. 1999)).

But this is no longer the law. Indeed, both the United States Supreme Court and the Tenth Circuit have clarified that exhaustion is *not* a jurisdictional prerequisite to a Title VII suit but is instead the basis for an affirmative defense. *See Ft. Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019) (holding that Title VII's "charge-filing instruction is not jurisdictional"); *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1155, 1184 n.10 (10th Cir. 2018) (explaining that exhaustion is an affirmative defense under Title VII); *Newberry v. Mascaro*, No. 2:24-cv-00020-GJF-JHR, 2024 WL 5076294, at *2 (D.N.M. Dec. 11, 2024) (explaining that exhaustion is an affirmative defense under Title VII and related federal statutes) (collecting cases)).

---

[4] In light of Plaintiff's citation to *Fort Bend County v. Davis*, 587 U.S. 541 (2019) for the proposition that "[t]he Supreme Court has squarely held that Title VII's administrative exhaustion requirement is a claim-processing rule, not a jurisdictional prerequisite[,]" NMCCH concedes in its reply brief that exhaustion is "not jurisdictional." Dkt. No. 15 at 1. Yet it persists in its contention that exhaustion still "must be enforced when, as here, a defendant timely raises it." *Id.* NMCCH goes on: "Nothing in *Fort Bend* removes a plaintiff's obligation to plead administrative exhaustion," as "[c]ourts in this Circuit continue to dismiss claims at the Rule 12(b)(6) stage where the operative judicial allegations exceed the scope of a timely charge." *Id.* at 2. In support, it *again* cites *Jones*, which is no longer good law as to the jurisdictional nature of a failure to exhaust. *See Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 6997397, at *1 (10th Cir. Oct. 24, 2023) (recognizing that *Jones* was overruled by *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1184, 1185–86 (10th Cir. 2018)); *see also Salemi v. Colo. Pub. Emps.' Ret. Ass'n*, 747 F. App'x 675, 688 (10th Cir. 2018) ("In *Lincoln*, we overturned our precedent . . . and held that a failure to exhaust administrative remedies creates only an affirmative defense subject to principles of waiver and estoppel") (citation omitted).

Although NMCCH is mistaken as to the nature of its exhaustion defense, it has not waived it, having raised the defense in both its Answer and the instant Motion. *See* Dkt. No. 9 at 2 ("Defendant denies that Plaintiff exhausted his administrative remedies as to Title VII, as more fully described in Defendant's Motion for Partial Dismissal'); Dkt. No. 10 at 3–5. As such, the Court considers — under the Rule 12(b)(6) standard rather than Rule 12(b)(1) — whether NMCCH has established as a matter of law that Plaintiff's Title VII retaliation claim does *not* fall within the scope of his EEOC charge. *See Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 69997397, at *1–2 (10th Cir. Oct. 24, 2023) (affirming the district court's dismissal under Rule 12(b)(6) for failure to exhaust administrative remedies where the plaintiff's "district-court claims d[id] not fall within the scope of the administrative investigation that could reasonably be expected to follow from the facts alleged in his EEOC charge").

For its part, NMCCH insists that "Plaintiff's own Complaint demonstrates that he did not exhaust Title VII retaliation." Dkt. No. 10 at 4. But Plaintiff *does* allege in his Complaint that he filed an EEOC charge and, in response, received an EEOC Right-to-Sue letter, which he incorporates into and attaches to his Complaint. Dkt. No. 5, Ex. A. Because NMCCH does not question the authenticity of the letter, the Court may consider it without converting the Motion into one for summary judgment. *See Tellabs, Inc.*, 551 U.S. at 322; *Pace*, 519 F.3d 1072. Still, NMCCH contends that both Plaintiff's "narrative and . . . [his attached Right-to-Sue letter] confirm that [his] charge concerned *disability* discrimination and retaliation under the *ADA*, not retaliation under the Title VII." Dkt. No. 10 at 4 (emphasis added). In support, NMCCH observes that the EEOC letter does not reference Title VII and that "the Complaint does not allege that Plaintiff raised any Title VII-protected category (race, color, religion, sex, or national origin) or any opposition to practices prohibited by Title VII during the administrative process." *Id.* at 4–5.

Moreover, NMCCH argues that Plaintiff's factual allegations "exclusively describe events related to Plaintiff's ADHD disclosure, accommodation request, and subsequent alleged adverse actions" without any "allegations of discrimination or retaliation tied to Title VII-protected classes." *Id*. at 5. Insisting that "Plaintiff did not include Title VII retaliation in his EEOC charge and did not obtain a Right to Sue letter for [a Title VII retaliation] claim," NMCCH argues that his claim for Title VII retaliation must be dismissed. *Id*. (citing *Simms v. Okla. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999)).

To be sure, "[a] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (internal quotations omitted). This exhaustion requirement serves "two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Id*. (internal quotations and citation omitted). "To advance these purposes[,] a plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id*. (internal quotations and citation omitted). Even so, courts liberally construe the allegations in an EEOC charge, which "must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith v. Cheyenne Ret. Inv. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).

For his part, Plaintiff insists that his Title VII retaliation claim is reasonably related to his EEOC charge. Dkt. No. 14 at 2 (citing *Jones*, 502 F.3d at 1186). He further contends that retaliation claims arising after protected activity and growing out of the charge are deemed exhausted, even if not separately listed. *Id*. (citing *Martinez v. Potter*, 347 F.3d 1208, 1210–11 (10th Cir. 2003)).

As Plaintiff describes his EEOC charge, it alleges "protected activity, retaliation, and adverse actions following his accommodation request and internal complaints." *Id*. Notably, in addition to alleging disability discrimination and failure to accommodate under the ADA, the Complaint alleges that "[l]eadership tolerated homophobic and racially insensitive remarks." Dkt. No. 5 at 3. Without the benefit of the EEOC charge itself, which neither party has provided to the Court at this stage of the litigation, it is not clear whether opposition to homophobic or racially insensitive remarks, or other potentially Title VII-protected activity, also featured in the EEOC charge. Relatedly, it is not clear from Count III of the Complaint what "unlawful practices" Plaintiff allegedly opposed or in what manner. *See id*. at 4–5 ("Defendant[] retaliated for Plaintiff's opposition to unlawful practices."). Without being fully apprised of the contents of Plaintiff's EEOC charge, the Court cannot discern whether his Title VII retaliation claim falls within its scope as he suggests.

In its reply, NMCCH offers its own description of what Plaintiff's EEOC charge includes and, more importantly, what it omits: "Plaintiff's charge alleges only disability discrimination and retaliation under the ADA. It identifies no Title VII protected class, no participation in Title VII proceedings, and no opposition to conduct prohibited by Title VII. . . . [T]he charge contains exclusively disability based allegations." Dkt. No. 15 at 2. NMCCH insists that, as a result, Plaintiff's Title VII retaliation claim falls outside the scope of his EEOC charge and must be dismissed for failure to exhaust. *Id*.

But this representation by counsel as to the contents of Plaintiff's EEOC charge does not constitute evidence before the Court and does not suffice to establish a lack of exhaustion at the Rule 12(b)(6) stage. Indeed, at this stage of the litigation, "the record is closed and consists only of the complaint, documents attached to or referred to in the complaint, and matters that are

judicially noticeable." *Vazquez-Garcia v. Centurion, LLC*, 172 F.4th 1150, 1157 (10th Cir. 2026) (citing *Fuqua v. Santa Fe Cnty. Sherriff's Office*, 157 F.4th 1288, 1297–98 (10th Cir. 2025)). Because neither party here suggests that the EEOC charge has been incorporated into the Complaint or is judicially noticeable, it falls outside of the closed pleadings and is unavailable for the Court's consideration under Rule 12(b)(6).

In the Court's view, NMCCH's Motion mistakenly places the burden to demonstrate exhaustion *on Plaintiff*, whereas the burden to demonstrate the affirmative defense of failure to exhaust squarely belongs to NMCCH. *See Vasquez-Garcia*, 172 F.4th at 1157 (explaining that a plaintiff need only state a claim upon which relief can be granted on issues for which she bears the burden of pleading and "need not anticipate in the complaint an affirmative defense that may be raised by the defendant[, as] it is the defendant's burden to plead an affirmative defense"); *see also Lax v. Corizon Med. Staff*, 766 F. App'x 626, 628 (10th Cir. 2019) (reversing the district court's dismissal for failure to exhaust administrative remedies under the Prison Litigation Reform Act and reasoning that where exhaustion is an affirmative defense, not a pleading requirement, a complaint's silence on that issue is not grounds for dismissal).

Without the benefit of the EEOC charge at issue, resolution of the factual issues inherent to the issue of exhaustion of Plaintiff's Title VII retaliation claim is not suited to the context of a motion to dismiss. *See Vasquez-Garcia*, 172 F.4th at 1157 (explaining that it is "generally inappropriate to grant Rule 12(b)(6) dismissal on the basis of an affirmative defense, unless 'the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements'") (citation omitted). Accordingly, the Court recommends that the presiding judge reject NMCCH's exhaustion argument and deny the Motion on that ground without prejudice to raising the issue anew on summary judgment.

**B. The Court recommends denial of the Motion as to the retaliatory discharge or wrongful termination claim (Count IV).**

In Count IV, Plaintiff alleges that he was wrongfully terminated in violation of the New Mexico public policy that protects employees who assert statutory rights. Dkt. No. 5. at 5 (citing *Garrity v. Overland Sheepskin Co. of Taos*, 917 P.2d 1382 (N.M. 1996)). New Mexico recognizes a common law cause of action for wrongful termination or "retaliatory discharge" as a "narrow exception to the rule of employment at will." *Shovelin v. Cent. N.M. Elec. Co-op., Inc.*, 850 P.2d 996, 1007 (N.M. 1993). Generally speaking, to recover for such a claim, a plaintiff "must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." *Id.* at 1006 (citation omitted). In addition, a plaintiff must establish a causal connection between his action and his subsequent discharge and demonstrate that his action furthered a public interest, rather than a private one. *Garrity*, 917 P.2d 1386–89. According to the New Mexico Supreme Court, the "linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee[,] the employer violated a 'clear mandate of public policy.'" *Shovelin*, 850 P.2d at 1006 (citation omitted). "A clear mandate of public policy . . . . may be gleaned from the enactments of the legislature and the decisions of the courts." *Id*. But "[t]he strongest indicators of a state's public policies appear in legislative declarations," including when the legislation "not only defines public policy, but also provides a remedy," such as with anti-discrimination statutes. *Vigil v. Arzola*, 699 P.2d 613, 619–20 (N.M. Ct. App. 1983), *rev'd in part on other grounds,* 687 P.2d 1038, and *overruled on other grounds by Chavez v. Manville Prods. Corp*, 777 P.2d 371 (N.M. 1989) (citing the New Mexico Human Rights Act, NMSA 1978, § 28-1-1 *et seq.,* as an example).

NMCCH contends that the factual allegations supporting Plaintiff's retaliatory discharge

focus on internal disagreements and adverse employment decisions that allegedly affected Plaintiff *individually* rather than serving a broader public interest. Dkt. No. 10 at 6. It goes on to describe Plaintiff's retaliatory discharge claim as "conclusory" and without sufficient detail to connect his termination to a recognized public interest. *Id*. Indeed, it insists that Plaintiff fails to specify the public policy or principle that encourages the conduct for which he claims retaliation. *Id*.

Liberally construing the Complaint, the Court understands Plaintiff to allege that NMCCH terminated him because he disclosed his ADHD condition, requested accommodation for that condition, and opposed NMCCH's discrimination by asserting statutory rights. Dkt. No. 5 at 2–5. Indeed, Plaintiff argues that he plausibly alleges that he engaged in protected activity in the form of internal complaints, accommodation requests, and the reporting of retaliation. Dkt. No. 14 at 2. And as discussed above, he incorporates into his Complaint his July 11, 2025 Right-to-Sue letter from the EEOC, which references a "charge" for which the EEOC made "no finding as to the merits." Dkt. No. 5, Ex. A. Plaintiff also *directly* alleges that he "filed a timely EEOC Charge." Dkt. No. 5 at 3. Thus, the Court can plausibly infer from these allegations that, in addition to lodging internal complaints, Plaintiff *also* reported NMCCH's alleged discrimination to the EEOC. *See* Dkt. No. 5, Ex. A. That he reported alleged discrimination to a government agency lends some credence to Plaintiff's contention that NMCCH's "attempt to characterize [his] conduct as merely 'private' ignores the public interest in preventing retaliation and discrimination in a residential children's home." Dkt. No. 14 at 3. As Plaintiff sees it, reporting retaliation and discrimination "furthers public policies embodied in the ADA, Title VII, the New Mexico Human Rights Act, and nonprofit governance standards." *Id*. at 2. The Court agrees.

Critically, "New Mexico courts have found that an employer who discharges an employee in violation of the NMHRA is also subject to a state law tort claim of discharge in violation of public policy." *Davis v. Gardner Turfgrass, Inc*., No. 15-CV-743-JAP-WPL, 2016 WL 5172820,

at *13 (D.N.M. July 29, 2016) (citation omitted). For instance, in *Grandy v. Wal-Mart Stores, Inc.*, 872 P.2d 859, 862 (1994), the New Mexico Supreme Court held that a plaintiff's allegation that she was terminated in retaliation for filing a complaint alleging discrimination on the basis of a medical condition supported her claim for retaliatory discharge against her employer, even though the NMHRA contains a separate provision providing recovery for such retaliation. *Id*. at 862–63. The court in *Grandy* was clear: "the tort of retaliatory discharge may be based on a violation of one of the public policy mandates set out in the Human Rights Act." *Id*. at 863. Moreover, New Mexico Courts have permitted employees to pursue retaliatory discharge claims without pursuing NMHRA claims and without participating in NMHRA's administrative procedures. *See Gormley v. Coca-Cola Enter.*, 85 P.3d 252, 255 (N.M. 2003).

Like the ADA, the NMHRA prohibits disability discrimination. More specifically, it prohibits employers both from terminating an employee because of physical or mental disability *and* from terminating an employee in retaliation for his opposition to disability discrimination. NMSA 1978, §§ 28-1-7(A) (providing that it is unlawful for "an employer . . . to discharge, . . . demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against a person otherwise qualified because of . . . a physical or mental disability"); 28-1-7(I)(2) (providing that it is unlawful to "engage in any form of threats, reprisals or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the [NMHRA]"). Because Plaintiff alleges that he was terminated for reporting disability discrimination — an act that New Mexico public policy, as embodied in the NMHRA, encourages — the Court is satisfied that Plaintiff has plausibly alleged a claim for retaliatory discharge. *See Davis v. Gardner Turfgrass, Inc.*, 2016 WL 5172820, at *13 (denying the employer's motion seeking dismissal of a retaliatory discharge claim in which the plaintiff alleged that she was fired for reporting racial harassment,

which New Mexico public policy encourages by virtue of the NMHRA).

Construing all reasonable inferences in Plaintiff's favor, the Court recommends NMCCH's Motion be denied as to Count IV.

**C. The Court recommends the Motion be granted, and Counts V and VIII dismissed, insofar as they allege breach of contract and breach of the implied covenant of good faith and fair dealing.**

In Count V, Plaintiff alleges that NMCCH "acted in bad faith, undermining fairness" and thereby breached the implied covenant of good faith and fair dealing. *Id*. at 5 (citing *Melnick v. State Farm*, 749 P.2d 1105 (N.M. 1988)). Relatedly, in Count VIII, he asserts a claim for breach of contract or, in the alternative, promissory estoppel, alleging that "Defendants promised student-loan payoff and advancement" and he "relied to his detriment." *Id*. at 5. Because Counts V and VIII are interrelated, the Court addresses them in tandem.

To begin, the Court observes that Plaintiff does not contend that NMCCH breached an *express* contract, nor does he supply a written contract for the Court's consideration. *See* Dkt. No. 5; Dkt. No. 14. Rather, construed broadly, the Complaint alleges an *implied* contract under which NMCCH was obligated to do two things: (1) repay Plaintiff's student loans, and (2) provide him with career advancement. *See* Dkt. No. 5 at 5 ("Defendants promised student-loan payoff and advancement; Plaintiff relied to his detriment."); *see also* Dkt. No. 14 at 3 (arguing that he states a claim for breach of an *implied* contract by "alleg[ing] that Defendant promised repayment of student loans and a leadership development/succession track as inducements for recruitment and retention"). With respect to NMCCH's alleged career advancement obligation, the Complaint provides a bit more detail, alleging that "[i]nternal leadership documents identified Plaintiff for the Executive Director succession track" but that NMCCH later "removed him from this path, eliminating a unique career opportunity." Dkt. No. 5 at 4. The Complaint also references and attaches "Exhibit D," which Plaintiff describes as "excerpts from Leadership Memo & Mentorship

Plan." Dkt. No. 5 at 4; Dkt. No. 5, Ex. D. The "Mentorship Plan" that makes up part of Exhibit D outlines various tasks, formatted in bullet points and categorized by department (*e.g.,* finance, HR, and legal), for which there are expected completion dates and is signed by Plaintiff. *See* Dkt. No. 5, Ex. D at 3.

Plaintiff argues that determining whether an implied contract obligated NMCCH to repay his student loans and to provide him with career advancement is a "fact-intensive question[] inappropriate for dismissal at the Rule 12 stage." Dkt. No. 14 at 3 (citing *Melnick*, 749 P.2d at 1109). NMCCH, on the other hand, insists that Plaintiff alleges neither an express nor implied contract with sufficiently definite terms but instead alleges "only *generalized* and *aspirational* statements regarding mentorship, leadership development, advancement opportunities, and alleged student loan repayment." Dkt. No. 15 at 3 (emphasis added). Emphasizing that the Complaint omits facts identifying contract terms such as the amount of repayment, duration, timing, conditions, or any other enforceable contractual obligations, NMCCH maintains that Plaintiff's breach of contract claim fails to state a claim. *Id*. And because the implied covenant of good faith and fair dealing cannot exist apart from an enforceable contract, NMCCH contends that Plaintiff likewise fails to state a claim for breach of this implied covenant.[5] Dkt. No. 10 at 7.

To state a claim for breach of contract, Plaintiff first must plausibly allege the formation of a valid New Mexico contract, which requires an agreement that is "factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist*., 918 P.2d 7, 29 (N.M. 1996). Employment contracts, in particular, are subject to additional requirements. That is, in New Mexico "an employment contract is for an indefinite period and is

[5] Alternatively, NMCCH argues that Plaintiff's breach of the implied covenant claim fails because he does not allege facts showing NMCCH engaged in bad faith conduct. Dkt. No. 10 at 7.

terminable at the will of either party *unless* the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise." *Hartbarger v. Frank Paxton Co*., 857 P.2d 776, 779 (N.M. 1993) (emphasis added) (citation omitted). Even so, New Mexico courts have recognized an exception to this general rule: "an implied contract term that restricts the employer's power to discharge." *Id*.

The parties here agree that New Mexico law permits an implied contract to arise from representations, conduct of the parties, or a combination of representations and conduct. Dkt. No. 14 at 3 (citing *Gormley*, 85 P.3d at 258–59); Dkt. No. 15 at 3 (citing *Gormley*, 85 P.3d at 258–59). But "[a]n implied contract is created only where an employer creates a reasonable expectation[, and] the reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon." *Hartbarger*, 857 P.2d at 783. If the alleged representation is not sufficiently explicit, courts will not imply a contract. *See id*. at 780.

Even liberally construing the allegations of the Complaint, the Court concludes that they fail to state a claim for breach of contract. In short, Plaintiff has not pled facts sufficient to establish enforceable contractual obligations on NMCCH's part to repay his students loans or to provide him with career advancement. Indeed, Plaintiff does not plead, even in conclusory fashion, the necessary elements of an offer, acceptance, consideration, and mutual assent, nor does he plead the necessary elements of contractual breach. Instead, he alleges only that he relied on NMCCH's promises of "student-loan payoff and advancement" to his detriment. Dkt. No. 5 at 5. With respect to his student loan debt, he does not allege *who* promised to pay off his loans or under what terms. As to his career advancement, he alleges only that internal documents "identified" him for executive advancement, but he stops short of alleging that NMCCH offered him a particular role, that he accepted the role, or that an agreement that he would perform the role was supported by consideration. Even more fundamentally, Plaintiff does not allege that NMCCH's promises

somehow modified an otherwise at-will employment relationship between himself and NMCCH.[6] At most, he asserts that NMCCH's purportedly "retaliatory conduct . . . frustrated [his] reasonable contractual expectations." Dkt. No. 14 at 3. But he does not identify the source or content of those "contractual expectations."

*Gormley*, a case on which both sides rely, is instructive. There, the plaintiff alleged an implied contract under which his employer was purportedly obligated to provide him with "light duties" and a minimum of 55 hours per week of work until he retired. 85 P.3d at 258. He argued that his employer breached the implied contract when it restricted his hours and relieved him of duties. *Id*. The employer, in contrast, argued that a single verbal assurance that the plaintiff would enjoy "light duties" and minimum hours until retirement did not create an enforceable implied contract and, relatedly, that there was no evidence that the parties intended to alter the at-will employment relationship. *Id*. Although the court ultimately determined that the plaintiff had presented sufficient evidence of the alleged implied contract as to work duties and minimum hours "to have the factual issue of whether an implied contract exist[ed] resolved by a fact-finder," it first emphasized that "[t]o support the existence of an implied contract, an oral representation must be sufficiently explicit and definite." *Id*. at 259 (emphasis added) (citing *Garrity*, 917 P.2d 1282).

Here, to the extent Plaintiff asks the Court to imply a contract to support his breach of contract claim, he fails to plead factual conduct by NMCCH that would evidence the type of intent required to form such a contract. Significantly, "the 'reasonableness of expectations' necessary to

---

[6] If Plaintiff were to plausibly allege that he was *not* an at-will employee, his separate claim for breach of the implied covenant of good faith and fair dealing would not necessarily be foreclosed. Indeed, the New Mexico Supreme Court has recognized a claim for breach of the implied covenant of good faith and fair dealing "as it applies to employment contracts that are *not* at-will employee arrangements."[6] *Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 857 (N.M. 1994). *But see Melnick*, 749 P.2d at 1111 (holding that the plaintiff did *not* have a cause of action for breach of the implied covenant to good faith and fair dealing, where he remained subject to an integrated, written, at-will employment contract).

plead an implied contract 'is measured by just how definite, specific, or explicit' the employer's representations were to the plaintiff." *Jones v. Hyatt Corp.*, No. CV 12-01301 MV/RHS, 2014 WL 12782783, at *13–15 (D.N.M. Dec. 12, 2014) (quoting *Hartbarger*, 857 P.2d at 783). And here, the facts Plaintiff alleges are simply "not sufficiently explicit" to plausibly allege that NMCCH created a reasonable expectation in Plaintiff of a contractual agreement to repay his student loans or to provide career advancement. *Id*.

Moreover, Plaintiff's related claim for breach of the implied covenant of good faith and fair dealing is "derivative of the breach-of-contract claim" and likewise fails. *See Back v. Conoco Phillps Co*., No. 12-0261 JB/WDS, 2012 WL 6846397, at *19–22 (D.N.M. Aug. 31, 2012). Put another way, the implied covenant does not impose duties where no contract exists. Having determined that Plaintiff fails to state a claim for breach of contract, and because the general rule in New Mexico is employment at-will, it follows that Plaintiff similarly fails to state a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the Court recommends that NMCCH's Motion be granted, and Counts V and VIII dismissed, insofar as they allege breach of contract and breach of the implied covenant of good faith and fair dealing. The Court further recommends, however, that Plaintiff be permitted leave to amend these claims, as the Court cannot say with certainty that granting such leave would be futile. *Cf. Rosenfield v. HSBC Bank*, USA, 681 F.3d 1172, 1189 (10th Cir. 2012) ("[D]ismissal with prejudice is appropriate where the complaint fails to state a claim and granting leave to amend would be futile.") (brackets, ellipses, and quotation marks omitted).

**D. The Court recommends denial of the Motion as to the promissory estoppel claim asserted as an alternative claim in Count VIII.**

Count VIII contains an alternative claim for promissory estoppel premised on the theory that NMCCH "promised student-loan payoff and advancement" on which Plaintiff "relied to his

detriment." Dkt. No. 5 at 5. Although this claim, too, is light on factual allegations, it nevertheless fares better than Plaintiff's breach of contract claim.

To state a claim for promissory estoppel under New Mexico law, a party must allege "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance" such that "injustice can be avoided only by enforcement of the promise." *Strata Prod. Co. v. Mercury Expl. Co.*, 916 P.2d 822, 827 (N.M. 1996) (citations omitted). In other words, to state a claim for promissory estoppel here, Plaintiff must plausibly allege that (1) NMCCH made a promise that induced some action or forbearance by him; (2) that he reasonably and foreseeably relied on that promise; and (3) the circumstances merit enforcement. *See id.*

NMCCH devotes little discussion to Plaintiff's promissory estoppel claim other than to complain that it lacks specificity. Despite suggesting that "[c]ourts routinely dismiss promissory estoppel claims premised on indefinite, aspirational statements," it fails to cite a single case in support of that proposition. *See* Dkt. No. 15 at 3–4. But notably, Plaintiff does not allege that NMCCH made an "aspirational statement" concerning student-loan payoff and career advancement; he specifies that NMCCH "promised" these things. *See* Dkt. No. 5 at 5. To the extent NMCCH disputes that it made the promises Plaintiff alleges, a Rule 12(b)(6) motion is not the proper mechanism for challenging factual allegations. *See Cooper v. City of Gallup, N.M.*, No. 1:24-504 MIS/GJF, 2025 WL 1664296, at *10 (D.N.M. June 12, 2025).

Construing Plaintiff's allegations broadly, the Court is satisfied, if only barely, that Plaintiff plausibly alleges that NMCCH's promises to pay his student loans and to provide him with career advancement reasonably induced him to accept and/or retain employment with NMCCH to his detriment. Thus, in contrast to the breach of contract claim, the Court concludes that Plaintiff states

a plausible alternative claim for promissory estoppel.[7]

**E. The Court recommends the Motion be granted as to the negligent retention and supervision claims and that Count VI be dismissed with leave to amend.**

In Count VI, Plaintiff alleges that NMCCH retained and supervised employees who engaged in retaliation, despite being on notice of such retaliatory conduct, and that it thereby engaged in negligent supervision and retention. Dkt. No.5 at 5. Claims of negligent supervision and retention require a plaintiff to allege that (1) the employee at issue was "incompetent or unfit"; (2) the employer knew or should have known of the unfitness; and (3) the employer's negligence was a proximate cause of the plaintiff's injuries. *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 164 (N.M. Ct. App. 2007); *see also* NMRA UJI 13-1647 (indicating that the elements of negligent hiring, retention, and supervision include that the defendant-employer "knew or should have known" an employee "would create an unreasonable risk of injury to" the plaintiff and that the defendant-employer's "negligence . . . was a cause of [the plaintiff's] injury").

Plaintiff's allegations in support of his negligent supervision and retention claims are neither robust nor specific. He alleges that "Defendants retained employees engaged in retaliation despite notice." Dkt. No. 5 at 5. Elsewhere, he alleges that "[o]ver forty employees departed [from NMCCH], many citing discrimination or retaliation" and that "[s]ilence by the Executive Director, HR Director, and Board normalized retaliation and created a culture of fear." *Id.* at 3. NMCCH insists that these factual allegations fail to identify any employee who was unfit for his or her position or to describe specific conduct that posed a foreseeable risk of harm to others. Dkt. No. 10 at 8. NMCCH emphasizes that Plaintiff provides no discussion of specific "prior incidents,

[7] Unlike a breach of contract claim, a promissory estoppel claim, which seeks *equitable* relief in the absence of a contract, cannot support Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. *See Bourgeous,* 872 P.2d at 856 (observing that every *contract*, whether express or implied, triggers the covenant of good faith).

complaints, or objective indicators that would have put the employer on notice of a risk of harm." *Id*. And finally, NMCCH observes that the harm Plaintiff alleges, including emotional distress and termination, appear to have arisen from NMCCH's own employment decisions rather than from an independent tortious act by a retained and supervised employee. *Id*. at 9. For each of these reasons, NMCCH insists that Plaintiff's negligent retention and supervision claim fails to state a claim. *Id*. Plaintiff, in contrast, maintains that his allegations "plausibly support negligent supervision and retention and cannot be resolved on a motion to dismiss." Dkt. No. 14 at 3.

In the Court's view, NMCCH's arguments are well-founded. After all, apart from conclusory allegations that "employees engaged in retaliation" of which NMCCH had notice, Plaintiff does not identify any specific employee or employees who he claims were unfit or who engaged in specific retaliatory conduct posing a foreseeable risk of harm under New Mexico law. As best the Court can surmise, Plaintiff's allegations are more along the lines of a general failure to correct internal employment disputes and culture. As pled, Plaintiff's negligent retention and supervision claim fails to provide NMCCH with fair notice of the nature of the claims or the grounds upon which it rests. *See Warnick v. Cooley*, 895 F.3d 746, 751 (10th 2018) ("Though a complaint need not provide 'detailed factual allegations,' it must give just enough factual detail to provide 'fair notice of what the . . . claim is and the grounds upon which it rests.'") (citation omitted); *Robbins v. Okla*., 519 F.3d 1242, 1248 (10th Cir. 2008) (observing that a complaint that mentions "no specific time, place, or person involved" gives a defendant "little idea where to begin" and fails to provide the notice to which a defendant is entitled under Fed. R. Civ. P. 8) (citation omitted).

Given the sparse factual allegations in the Complaint, the Court recommends that Count VI be dismissed but with leave to amend.

**F. The Court recommends the Motion be granted as to the "Pattern and Practice"**

**claim and Count IX dismissed insofar as that count purports to assert an independent claim.**

Finally, in Count IX and under the heading "Pattern and Practice of Retaliation (Public Policy)," Plaintiff alleges that "Defendants maintained policies discouraging protected activity, violating public policy." Dkt. No. 5 at 5. In response to NMCCH's request for dismissal of this claim, Plaintiff clarifies that he "does not assert 'pattern and practice' as a standalone tort but as an evidentiary theory supporting his retaliation and wrongful discharge claims." Dkt. No. 14 at 4. And yet, "Pattern and Practice of Retaliation" is couched as a separate count in his Complaint. *See* Dkt. No. 5 at 5. Given Plaintiff's concession that "Pattern and Practice" is not a standalone claim but an evidentiary theory on which he intends to rely, the Court recommends that Count IX be dismissed insofar as it purports to assert an independent claim.

## V. CONLCLUSION

**IT IS THEREFORE RECOMMENDED** that Defendant's Partial Motion to Dismiss for Failure to Exhaust Administrative Remedies and Failure to State a Claim (Dkt. No. 10) be **GRANTED IN PART AND DENIED IN PART** as follows:

(1) that Counts V (Breach of Implied Covenant of Good Faith and Faith Dealing), VI (Negligent Retention and Supervision), and VIII (insofar as it asserts a claim for Breach of Contract) be **DISMISSED WITHOUT PREJUDICE** with leave to amend;

(2) that Count IX (Pattern and Practice of Retaliation) be **DISMISSED WITH PREJUDICE**; and

(3) that the Motion otherwise be **DENIED**.

**SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**